UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENDROWSKI SELECKY
PROFESSIONAL CORPORATION,
HARRY CENDROWSKI, AND
CENDROWSKI CORPORATE
ADVISORS, LLC. ,

        Plaintiffs,

vs.

Case No. 10-CV-14432

HON. GEORGE CARAM STEEH

NATIONAL ASSOCIATION OF
CERTIFIED VALUATION ANALYSTS,
INC. AND CONSULTANTS'
TRAINING INSTITUTE, LLC.,

        Defendants.
_____/

ORDER GRANTING DEFENDANTS' MOTION FOR
LEAVE TO AMEND ANSWER TO ADD COUNTERCLAIMS [DOC. 52]

Plaintiffs' complaint alleges that defendants, National Association of Certified Valuation Analysis, Inc. and Consultants' Training Institute, LLC ("NACVA"), breached the parties' License Agreement by improving on certain copyrighted works, and then failing to pay plaintiffs for using those improvements. NACVA claims that during discovery, it uncovered evidence suggesting that plaintiffs actually breached the License Agreement and committing other wrongful acts against defendants. Based on this evidence, NACVA moves for leave to amend their answer to add six counterclaims against plaintiffs.

FACTS

Plaintiffs, Cendrowski Selecky Professional Corporation, Harry Cendrowski, and Cendrowski Corporate Advisors, LLC ("Cendrowski"), provide forensic accounting, fraud deterrence, fraud investigation and risk management services.  Harry Cendrowski is an internationally recognized expert in this field and has authored multiple books and lectures on the subject of fraud deterrence.

Defendant NACVA is in the business of training and certifying accounting and financial professionals in the areas of intangible asset valuation services, financial forensic services, and fraud detection and prevention.  NACVA first offered a five-day fraud deterrence training course in 2001.  NACVA sought to improve its fraud deterrence training course, and with that in mind, a meeting took place on March 1, 2003 in Salt Lake City.  Mr. Cendrowski was present at the meeting, and it was agreed that he would be responsible for days two and four of the five-day course.  Days one, three and five were prepared by NACVA instructors, Ms. Perzel, Mr. Long and Mr. McBay.

The parties then entered into a License Agreement, whereby they agreed to certain ownership rights in "Copyrighted Works," that were part of the curriculum for NACVA's five-day fraud deterrence course.  The first License Agreement was signed in 2003, and a superseding License Agreement was entered in 2007.

The License Agreement identifies Cendrowski as the Licensors and NACVA as the Licensees.  "Licensors are the owner of, or hold a 50/50 joint copyright with Licensees to, copyrighted works related to fraud prevention and detection training . . . ."  Schedule 1 of the Agreement, which identifies the Copyrighted Works, is titled "Fraud Prevention and Detection".  Days 1, 3 and 5 of the outlined fraud deterrence course are

identified as the content in which the parties to the License Agreement hold a 50/50 joint copyright.  Days 2 and 4 are identified as the subject of a copyright in Cendrowski's name alone.

      Paragraph 2(a) is entitled License Grant, and provides:

> In exchange for good and valuable consideration, the sufficiency and receipt of which is acknowledged, Licensors hereby grant to Licensees and Licensees accept an exclusive, worldwide license to use, reproduce, edit, copy, publish and distribute the Copyrighted Works, in any and all media . . . .  Licensees shall have the right to make derivative works of the Copyrighted Works provided, however, that Licensors shall have the right to review said changes for quality purposes.  No such changes shall be used without the approval of Licensors.  Licensors agree that any such approval will not be unreasonably withheld.  <u>Any improvements or derivative works prepared for Licensees by Licensors to the Copyrighted Works will be made available to licensees and constitute Copyrighted Works subject to the terms and conditions of this Agreement.  This exclusive license shall not prevent Licensors from using the copyrighted Works for Licensors' own business purposes.</u>

(2007 License Agreement, ¶ 2(a) (emphasis added)).  Paragraph 2(a) requires that any improvements or derivative works prepared *for defendants by plaintiffs* must be made available to them, but expressly states that it does not prevent plaintiffs from using the Copyrighted Works for their own business purposes.

      Paragraph 2(d) of the License Agreement states that "[a]ny improvement made by Licensors or Licensees to the original Copyrighted Works shall constitute Copyrighted Works subject to the terms of this Agreement."  Pursuant to paragraph 3, the Licensees are required to "prominently . . . label all documentation containing Copyrighted Works along with all derivatives of course materials with the legend set forth below."  The legend identifies the materials as containing copyrighted information

belonging to Cendrowski, and states that the information is being used pursuant to a license granted by Cendrowski.

"Excepted Activity" is spelled out in paragraph 12 such that "nothing in this Agreement shall prohibit Licensors from developing, participating in or licensing any fraud deterrence, prevention or detection works or programs in participation with or on behalf of [IACVA] or any other association, venture or program for sale, distribution, use or presentation outside of the United States of America." Therefore, the License Agreement expressly excludes plaintiffs' fraud deterrence programs and presentations for the International Association of Valuators, Consultants, and Accountants ("IACVA") outside of the United States.

In its November 5, 2010 complaint, Cendrowski alleges that after entering the License Agreement, NACVA commissioned an instructor who developed an improvement upon the Copyrighted Works, and NACVA used that improvement, but "never paid any royalties" to Cendrowski as required by the License Agreement.

The deposition of NACVA's former head of fraud deterrence programs, William Hanlin, took place on December 14, 2011. Defendants filed their motion to amend their answer to assert counterclaims based on information they learned during Mr. Hanlin's deposition. Mr. Hanlin testified that Mr. Cendrowski presented a five-day fraud deterrence course as an IACVA instructor in Bahrain in 2009, at the same time that he was the head of NACVA's fraud unit. According to NACVA, the material used by Mr. Cendrowski in his Certified in Fraud Deterrence ("CFD") course for the IACVA is likely a derivative of or improvement on the Copyrighted Works jointly owned by NACVA and

Cendrowski, and made for the benefit of NACVA.  This is the basis for NACVA's counterclaims of breach of license agreement, accounting and declaratory judgment.

Mr. Hanlin previously conducted a comparison between the Copyrighted Works provided to him by Mr. Cendrowski and a copy of an alleged improvement created by Mr. Darrell Dorrell of the Forensic Accounting Academy, on behalf of NACVA. Defendants contend that at the deposition it became apparent to them that Mr. Cendrowski's version of the Copyrighted Works was an improvement on the Copyrighted Works that NACVA had in their possession.  In addition, Mr. Cendrowski's version bore a copyright notice for the year 2009.

Further discovery has revealed that on July 29, 2009, Cendrowski Corporate Advisors, LLC ("CCA") registered the copyright for a work entitled "Fraud Prevention and Detection I".  Cendrowski Selecky Professional Corporation was listed as the sole author of the work, and the date of first publication was listed as July 8, 2003.  On August 4, 2009, CCA registered a copyright for a work entitled "Fraud Prevention and Detection II."  CCA was listed as the sole author of the work, and the date of first publication was May 10, 2009 in Bahrain.  Based on their review of the deposit copies of the 2003 and 2009 Copyrighted Materials that Cendrowski produced in discovery, NACVA concluded that Cendrowski is claiming sole authorship and ownership of materials it registered with the U.S. Copyright Office that it separately claims to co-own with NACVA in the License Agreement.  NACVA also concluded that Cendrowski created an improvement of the Copyrighted Works and presented it in Bahrain.

NACVA relies on this evidence to support its proposed counterclaims of false advertising and false designation of origin, and common law unfair competition.  NACVA

points out that it is unable to bring a claim under the Copyright Act because it has not been named as a co-author or co-owner on the copyright registration.

## ANALYSIS

I. Motion to Amend

Leave to amend must be freely given when justice so requires under Fed. R. Civ. P. 15(a), but that right is not unfettered. The court is to consider several factors when deciding when to allow a motion to amend:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

Commercial Money Ctr., Inc. v. Illinois Union Ins., Co., 508 F.3d 327, 346 (6th Cir. 2007) (citations omitted).

Defendants contend that they were not aware of the bases of their proposed counterclaims until three pieces of evidence came to their attention during discovery. The deposit copies for the fraud deterrence course materials in which Cendrowski claimed a federally registered copyright were not produced by plaintiffs in full until December, 2011. A review of these materials revealed that Cendrowski had registered as a sole author certain materials that are clearly jointly owned by Cendrowski and NACVA.

The other evidence was discovered during Mr. Hanlin's deposition on December 14, 2011, the first and only deposition to be taken in the case. Mr. Hanlin testified that Mr. Cendrowski presented a five-day fraud deterrence course as an IACVA instructor in

6

Bahrain in 2009.  Some of the methodology was new content, which NACVA considers to be part of the Copyrighted Works since it was prepared by Cendrowski while he was the head of NACVA's fraud deterrence unit.  In addition, a version of the Copyrighted Works given to Mr. Hanlin by plaintiffs, for purposes of conducting a comparison with an alleged improvement on the Copyrighted Works created by Mr. Darrell Dorrell for defendants, was produced to NACVA on December 13, 2011.  Plaintiffs' version of the Copyrighted Works is described by defendants as an improvement which was not made available to them as required under the License Agreement.

Plaintiffs point out that they posted the Bahrain conference on their website as of March 6, 2009, issued a press release about it on March 2, 2009, and that IACVA announced its association with plaintiffs on April 14, 2009.  Plaintiffs' contention is that their behavior was transparent, and easily discovered by defendants prior to this late stage of the litigation.  At the very latest, defendants learned of their proposed counterclaims in December, 2011, but waited until February 14, 2012 to file their motion for leave to amend, with knowledge of the March 30, 2012 discovery deadline.

There is no evidence of bad faith on the part of defendants in this case.  Nor does the court find that allowing NACVA to assert its counterclaims will significantly delay resolution of the dispute.  The counterclaims relate to contributions to the fraud deterrence course, which is the central issue of the complaint.  There has not been extensive discovery in this case, and any additional discovery will concern plaintiffs' Bahrain presentation, and will likely include re-taking the deposition of Mr. Hanlin.  Plaintiffs have not demonstrated that allowing defendants' amendment will hinder plaintiffs' "ability to contest [defendants'] claim[s]."  Sec. Ins. Of Hartford v. Tucker &

Assocs., Inc., 64 F.3d 1001, 1009 (6th Cir. 1995). In the end, the court finds that justice requires allowing NACVA's amendment to add counterclaims in this case.

II. Futility

Plaintiffs contend the proposed counterclaims are futile because under the License Agreement, plaintiffs granted defendants a license to use the Copyrighted Works, not the other way around. The License Agreement does not entitle defendants to any royalties, while it requires defendants to mark the Copyrighted Works as belonging to Cendrowski. Finally, the License Agreement expressly permits plaintiffs to use the Copyrighted Works for their "own business purposes", and excepts all of plaintiffs' work "outside of the United States of America."

A proposed amendment is "futile" when it would not survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See United States v. Wood, 877 F.2d 453, 456 (6th Cir. 1989).

Defendants' proposed counterclaim for breach of the license agreement is based on the theory that the materials plaintiffs presented in Bahrain were actually prepared for defendants. Given Mr. Cendrowski's position as the head of NACVA's fraud deterrence program, defendants proffer that Mr. Cendrowski likely considered the improvement to the jointly-owned course materials to be Copyrighted Works. To the extent Mr. Cendrowski might have prepared the improvements to the jointly-owned materials for someone other than NACVA, defendants argue that would be evidence of bad faith. The likelihood that NACVA's breach of the License Agreement claim will succeed on the merits depends on a question of fact, and therefore is not futile.

The counterclaim for an accounting does not rely on the License Agreement to impose royalty obligations on plaintiffs.  Rather, defendants rely on principles of equity developed under copyright law for the proposition that "the prevailing rule is that a joint owner is under a duty to account to the other joint owners of the work for a ratable share of the profits realized from the use of the work." Nimmer on Copyright § 6.12[A], pp. 6-50 (2011).  Defendants make clear that they do not dispute that plaintiffs have the right to use or license use of the Copyrighted Works.  However, they contend that use of the jointly-owned works requires an accounting of profits realized from such use.  See DeBitetto v. Alpha Books, 7 F. Supp.2d 330, 335 n.6 (S.D.N.Y. 1998) ("a joint owner must account to the other joint owner for a share of the profits realized from her sole use of the jointly owned work.").

Defendants' Lanham Act and common law unfair competition claims allege that plaintiffs made a false and misleading statement about the origin and authorship of jointly-owned days 1, 3 and 5 of the fraud deterrence course.  In alleged disregard of defendants' rights, plaintiffs' website and a press release announced a partnership between plaintiffs and Reed Smith Partners, stating that plaintiffs created the fraud deterrence training program being offered.

Plaintiffs' alleged false or misleading representations about the authorship of days 1, 3 and 5 of the training program, along with their registration of the 2003 and 2009 Copyrighted materials falsely listing themselves as sole authors, constitute defendants' conversion claim.

The court finds that defendants' proposed counterclaims for breach of the license agreement and an accounting, as well as their counterclaims under the Lanham Act and

for unfair competition, conversion, and declaratory relief, are not futile. Defendants' motion for leave to amend their answer to add counterclaims is GRANTED.

Dated: April 30, 2012

           S/George Caram Steeh
           GEORGE CARAM STEEH
           UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 30, 2012, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---